**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------X     Case No.
ARIELLA CAMPISI,

                                        Plaintiff,                          **COMPLAINT**

                    -against-
                                                                           **PLAINTIFF DEMANDS**
THE CITY UNIVERSITY OF NEW YORK, and DEAN                                   **A TRIAL BY JURY**
GEORGE RANALLI, *Individually*,

                                        Defendants.
-------------------------------------------------------------------------X

Plaintiff ARIELLA CAMPISI ("Plaintiff"), by and through her attorneys, PHILLIPS &

ASSOCIATES, Attorneys at Law, PLLC, hereby complains of Defendants, upon information

and belief as follows:

## NATURE OF THE CASE

1.     Plaintiff complains pursuant to <u>Title IX</u> of the Education Amendments of 1972, 20

       U.S.C. § 1681, *et seq.* ("Title IX"), and the <u>New York City Human Rights Law</u>, New

       York City Administrative Code, § 8-107, *et seq.* ("NYCHRL"), and seeks damages to

       redress the injuries she has suffered as a result of being Sexually Harassed and

       Discriminated against on the basis of her Gender by Defendants.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331.

3.     The Court has supplemental jurisdiction over Plaintiff's claims brought under city law

       pursuant to 28 U.S.C. § 1367.

4.     Venue is proper in this district, pursuant to 28 U.S.C. § 1391(b), as it is a judicial district

       in which a substantial part of the events or omissions giving rise to the claims occurred.

## PARTIES

5.   At all times relevant, Plaintiff was and is a resident of the State of New York and County of Kings.

6.   At all times relevant, Defendant THE CITY UNIVERSITY OF NEW YORK ("CUNY") was and is a public university system, duly existing pursuant to, and by virtue of, the laws of the State of New York.

7.   At all times relevant, Defendant CUNY was and is an institution of higher learning as those terms are defined under the New York Education Law (see NY Edn. Law §2).

8.   At all times relevant, Defendant CUNY operates and/or maintains a senior college in New York City commonly referred to as the City College of New York (the "City College").  Further, the Bernard and Anne Spitzer School of Architecture (the "Spitzer School") is one of the schools which make up the City College of New York, and is located at 160 Convent Avenue, New York, NY 10031.

9.   Upon information and belief, Defendant CUNY receives federal financial assistance.

10.   At all times relevant, Defendant DEAN GEORGE RANALLI ("DEAN RANALLI") was and is employed by Defendant CUNY and is employed as the Dean of the Spitzer School.

11.   At all times relevant, Plaintiff was and is an enrolled student at the City College of New York, as well as an employee of Defendant CUNY.

12.   At all times relevant, Defendant DEAN RANALLI held supervisory authority over Plaintiff and had the power to hire, fire, and/or directly affect the terms and conditions of Plaintiff's employment with Defendant CUNY.

13.   Defendant CUNY and Defendant DEAN RANALLI shall be herein referred to together at "Defendants."

**MATERIAL FACTS**

2

14.     In or around the Fall of 2010, Plaintiff enrolled at the City College as an undergraduate student.

15.     In or around January 2013, Plaintiff was hired as a college assistant at the Spitzer School and began working approximately twenty (20) hours per week.  She initially earned $11.00 per hour, but after multiple raises, earned $15.00 per hour.

16.     Upon starting work at the Spitzer School, Plaintiff was under the supervision of Michael Miller (who, upon information and belief, held the position of "Head of Operations"), Erica Wzsolek (who, upon information and belief, held the position of Assistant to the Dean), as well as Defendant DEAN RANALLI himself.  Plaintiff's job included mostly administrative work and she regularly and continuously worked on projects directly with/ for Defendant DEAN RANALLI.

17.     On or about December 16, 2013, Plaintiff was invited to, and attended, a Spitzer School-sponsored faculty party at Smoke Jazz & Supper Club located at 2751 Broadway, New York, NY 10025.  Defendant DEAN RANALLI was among the individuals who attended this event.

18.     The party lasted from approximately 3:00 PM to 6:00 PM.  At or around 6:00 PM, as Plaintiff was leaving the holiday party, Defendant DEAN RANALLI approached Plaintiff and asked Plaintiff if she needed a car ride.  Plaintiff asked in which direction he was driving and Defendant DEAN RANALLI stated he was heading downtown. Because Plaintiff needed to board a train to travel to her apartment in Brooklyn, she said yes.

19.     Defendant DEAN RANALLI immediately told Plaintiff to sit in the front passenger seat (Defendant DEAN RANALLI was also giving a ride to an adjunct professor who he

wanted to sit in the rear seat).

20. Shortly after driving away from the Smoke Jazz & Supper Club, Defendant DEAN RANALLI began driving on the West Side Highway. Almost immediately after getting on the West Side Highway, Defendant DEAN RANALLI unsolicited and unwelcomely began rubbing Plaintiff's leg in a sexual manner. More specifically, Defendant DEAN RANALLI began rubbing Plaintiff's left leg; Plaintiff was wearing a skirt and he began rubbing her knee and mid-thigh region in a sexual manner right below where her skirt ended.

21. Plaintiff immediately became shocked and disgusted by this. Nevertheless, Defendant DEAN RANALLI continued to intermittently move his hand from his car's center console to Plaintiff's leg and continued to rub her left leg mid-thigh section for nearly thirty (30) minutes as there was considerable traffic on the West Side Highway that evening.

22. Defendant DEAN RANALLI exited off the West Side Highway around the Union Square area of Manhattan. The adjunct professor exited the back seat and began walking away down the sidewalk. Nevertheless, as Plaintiff was attempting to exit the car, Defendant DEAN RANALLI stopped her and told her that he needed to talk to her "for a minute." Plaintiff paused, looked back at Defendant DEAN RANALLI, and he stated, "You look so beautiful tonight, can I kiss you?"

23. Plaintiff did not respond, quickly exited his car, walked hurriedly into the bathroom of the nearest restaurant, and began to cry.

24. The following day, on or about December 17, 2013, Plaintiff went to work and immediately reported what had happened to Erica Wzsolek. Erica Wzsolek was in

4

noticeable shock and stated, "We need to get Michael [Miller]."

25.    They then both told Michael Miller, who expressed dismay at what he had heard.

26.    Both Michael Miller and Erica Wzsolek told Plaintiff that they were going to report the matter to Defendant CUNY's Office of Human Resources in order for an investigation and proper action to be taken.

27.    A few days later, Erica Wzsolek told Plaintiff that she (Erica) had spoken to Defendant DEAN RANALLI, who confessed to what he had been accused of doing. Erica Wzsolek also told Plaintiff that Defendant DEAN RANALLI wanted to apologize to her.

28.    In or around the end of January 2014, after Defendant DEAN RANALLI had returned from Winter break, Plaintiff had a meeting with Erica Wzsolek and Defendant DEAN RANALLI in his office whereat Defendant DEAN RANALLI apologized to Plaintiff and attributed his behavior to the fact that he had been inebriated that evening.

29.    In response to Plaintiff's complaint, Plaintiff was moved to a different office and was told it was so that she would not have to interact with Defendant DEAN RANALLI. Specifically, her office was moved from Defendant DEAN RANALLI's conference room to an office two doors down. Also, Erica Wzsolek and Michael Miller told Plaintiff that she would have "little to do" with Defendant DEAN RANALLI. However, in practice, this was not true.

30.    Specifically, Plaintiff's office was still on the same floor as Defendant DEAN RANALLI's office (and in very close proximity at that), she still routinely saw Defendant DEAN RANALLI in the hallways, and still had to work on projects which compelled her interaction with Defendant DEAN RANALLI.

31.    Distraught by the fact that Defendant CUNY's "solution" was such that she had to see

her harasser and was compelled to interact with him on a near-daily basis (and habitually multiple times each day), Plaintiff began suffering from stress and depression which caused Plaintiff's grades to decline. Furthermore, Plaintiff had not received any word from Defendant CUNY as to the outcome of any investigation she was led to believe was occurring.

32.    Accordingly, around Commencement of 2014 (in or around May), Plaintiff quit working for Defendant CUNY.

33.    In or around September 2014, Plaintiff's father went and spoke with Erica Wzsolek. During their meeting, Plaintiff's father expressed that Plaintiff was "struggling" with everything that had happened and inquired as to whether her not working had anything to do with the incident involving Defendant DEAN RANALLI. Also, during their discussion, Erica Wzsolek admitted that Defendant DEAN RANALLI had indeed sexually harassed Plaintiff.

34.    Plaintiff continued to hear nothing about the purported investigation that she was led to believe was being undertaken by Defendant CUNY. Plaintiff became increasingly dismayed and on or about March 24, 2015, Plaintiff went to Defendant CUNY's Office of Human Resources to request an update.

35.    Nevertheless, upon Plaintiff inquiring as to this, Plaintiff was told that the Office of Human Resources was the wrong department for a complaint of this nature, and was told that instead, she had to make a complaint to the Office of Diversity and Compliance. Plaintiff became shocked and distraught that she had been led to believe for approximately a year and a half that a supposed investigation that was taking place, yet had actually never even begun.

36. Plaintiff immediately met with Defendant CUNY personnel from the Office of Diversity and Compliance, and also met with individuals from the Public Safety Department. Shortly thereafter, the Dean of Diversity, Compliance and Faculty Relations admitted that her complaint had never previously been investigated and that her supervisors (employees and agents of Defendant CUNY) had erred by reporting the matter to the incorrect department.

37. Upon information and belief, upon actually conducting an investigation, Plaintiff's claims of sexual harassment at the hands of Defendant DEAN RANALLI were substantiated.

38. Based on the foregoing, after Defendant CUNY received actual knowledge of sexual harassment at the hands of Defendant DEAN RANALLI, it failed to take sufficient action to prevent further harassment to Plaintiff, in violation of Title IX.

39. Following Defendant DEAN RANALLI's sexual harassment of Plaintiff, the actions undertaken by Defendant CUNY were wholly insufficient to remedy any risk that Plaintiff may encounter further sexual harassment, and thus, created a hostile environment that effectively deprived her of the educational opportunities or benefits provided by Defendant CUNY, in violation of Title IX.

40. Defendant CUNY's response was inadequate, erroneous, wholly improper, and significantly delayed so as to constitute deliberate indifference by making Plaintiff feel vulnerable to further abuse or harassment and condoning an environment which purported to overlook claims of unconsented touching and sexual harassment (which, upon information and belief, was never denied by the perpetrator). Moreover, Defendant CUNY's response was clearly unreasonable in light of the circumstances as they were then known.

41.    Because of the deliberate indifference exhibited by Defendant CUNY, Plaintiff was unable to fulfill her full potential as a student, and accordingly, was caused to suffer a decline in her grades and elevation in her stress, anxiety, and depression, due to Defendant CUNY's deliberate indifference to her complaint and thereafter misleading her as to the status of an investigation.

42.    Further, because of the deliberate indifference exhibited by Defendant CUNY, Plaintiff felt unable to work at her on-campus job, upon which she depended financially.

43.    Also, Plaintiff, as an employee of Defendant CUNY, was caused to suffer an unlawful hostile work environment on account of her gender at the hands of her supervisor.

44.    As a result of the above, Plaintiff has suffered emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.   Plaintiff has further experienced severe emotional and physical distress.

45.    Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of the Court.

46.    Defendant CUNY's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.   As such, the Plaintiff demands liquidated and punitive damages as against Defendant CUNY.

**AS A FIRST CAUSE OF ACTION**
**VIOLATION OF TITLE IX OF THE**
**EDUCATIONAL AMENDMENTS OF 1972, 20 U.S.C. § 1681**
**(Not Against Individual Defendant)**

47.    Plaintiff repeats and realleges each and every paragraph above as if said paragraph was more fully set forth herein at length.

48.    Upon information and belief, Defendant CUNY receives federal financial assistance.

49.    Plaintiff sustained harassment because of her sex that was so severe, pervasive, and/or

objectively offensive that it deprived her of access to educational opportunities or benefits provided by Defendant.

50.   Defendant CUNY had actual knowledge of the harassment sustained by Plaintiff.

51.   Defendant CUNY's response to the harassment sustained by Plaintiff and/or its lack of response was deliberately indifferent, insofar as the response or lack thereof was clearly unreasonable in light of the known circumstances.

### AS A SECOND CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

52.   Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

53.   The New York City Administrative Code § 8-107(1) provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

54.   Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code § 8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of her gender (sexual harassment).

### AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

55.   Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

56.     The New York City Administrative Code § 8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

57.     Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code § 8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

**AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION
UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**

58.     Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.  The New York City Administrative Code § 8-107(13) Employer liability for discriminatory conduct by employee, agent or independent contractor, states:

> a.   An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.
>
> b.   An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:
>
> > 1.   the employee or agent exercised managerial or supervisory responsibility; or
> >
> > 2.    the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to

10

have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

3.      the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

c.  An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an independent contractor, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

59.     Defendants violated the section cited herein as set forth.

## JURY DEMAND

60.     Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A.      Accept jurisdiction over this action;

B.      Empanel a jury to hear and decide this action;

C.      Award to Plaintiff declaratory relief in the form of an injunction and order requiring that Defendant CUNY revise its policies, procedures, and practices so that it is in compliance with Title IX;

D.      Award to Plaintiff compensatory damages resulting from her pain and suffering resulting from the Defendants' sexual harassment and deliberate indifference;

11

E.     Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the

       action; and

F.     Awarding Plaintiff such other and further relief as the Court may deem equitable, just and

       proper to remedy the Defendant's unlawful practices.

Dated: New York, New York
       June 19, 2015

                                            **PHILLIPS & ASSOCIATES,**
                                            **ATTORNEYS AT LAW, PLLC**


                              By:    _____
                                     Casey Wolnowski, Esq.
                                     *Attorneys for Plaintiff*
                                     45 Broadway, Suite 620
                                     New York, New York 10006
                                     (212) 248-7431
                                     cwolnowski@tpglaws.com