UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
                                                  :

ARIELLA CAMPISI,                         :
                                                  :

                              Plaintiff,    :          15 Civ. 4859 (KPF)
                                                  :

                     v.                    :         OPINION AND ORDER
                                                    :

THE CITY UNIVERSITY OF NEW YORK and:
DEAN GEORGE RANALLI, individually,   :
                                                  :

                              Defendants. :
                                                  :
------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: <u>August 9, 2016</u>

KATHERINE POLK FAILLA, District Judge:

       Plaintiff Ariella Campisi filed this action alleging sexual harassment and gender discrimination under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688, and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-107 to 8-131 (the "NYCHRL").  Defendants City University of New York ("CUNY") and George Ranalli ("Ranalli," and together with CUNY, "Defendants") have moved to dismiss Plaintiff's claims.  For the reasons set forth in the remainder of this Opinion, Defendants' motions are denied.

BACKGROUND[1]

## A.    Factual Background

### 1.    Plaintiff's College Enrollment and Employment

       In or around the fall of 2010, Plaintiff enrolled as an undergraduate student at The City College of New York ("City College"), a college operated by

---

[1]     As is necessary on a motion to dismiss, the facts set forth in the Amended Complaint ("Am. Compl.," Dkt. #20) are accepted as true.  For convenience, Defendant CUNY's opening brief (Dkt. #27) is referred to as "CUNY Br." and its reply brief (Dkt. #35) as

Defendant CUNY.  (Am. Compl. ¶¶ 8, 14).  As a student at CUNY, Plaintiff was eligible to participate in the "DC 37 program," a CUNY program offering tuition assistance and healthcare benefits to students so long as they (i) were enrolled at the school, (ii) maintained a certain grade point average, and (iii) worked a minimum of 17.5 hours per week.  (*Id.* at ¶¶ 16-17).

Around January 2013, Plaintiff was hired as a "college assistant" at the Bernard and Anne Spitzer School of Architecture (the "Spitzer School"), a school within City College.  (Am. Compl. ¶¶ 8, 15).  This position allowed Plaintiff to enroll in the DC 37 program and take advantage of its benefits.  (*Id.* at ¶ 18).  As a college assistant, Plaintiff reported to Spitzer School Head of Operations Michael Miller, Assistant to the Dean Erica Wzsolek, and Dean George Ranalli.  (*Id.* at ¶¶ 10, 19).  Plaintiff worked approximately 20 hours per week, and her responsibilities consisted of administrative work and projects requiring her to work with Ranalli.  (*Id.* at ¶¶ 15, 19).

### 2.    The Harassment by Ranalli

On December 16, 2013, Plaintiff went to a faculty holiday party sponsored by the Spitzer School; Ranalli was also in attendance.  (Am. Compl. ¶ 20).  At the end of the party, around 6:00 p.m., Ranalli approached Plaintiff and asked if she needed a car ride.  (*Id.* at ¶ 21).  Because Ranalli was headed downtown, in the same direction as Plaintiff's train home to Brooklyn, Plaintiff accepted.  (*Id.*).  Ranalli asked Plaintiff to sit in the front passenger seat of his

"CUNY Reply"; Defendant Ranalli's opening brief (Dkt. #30) is referred to as "Ranalli Br." and its reply brief (Dkt. #34) as "Ranalli Reply"; and Plaintiff's brief in opposition to both Defendants (Dkt. #33) is referred to as "Pl. Opp."

car, while an adjunct professor also receiving a ride sat in the back seat.  (*Id.* at ¶ 22).  Soon after they drove away from the party, Ranalli began to rub Plaintiff's leg, between her knee and her mid-thigh region just beyond the hem of her skirt, "in a sexual manner." (*Id.* at ¶ 23).  Ranalli continued to intermittently move his hand between the car's center console and Plaintiff's leg for 30 minutes as the car drove in heavy traffic on the West Side Highway. (*Id.* at ¶ 24)  Plaintiff was "shocked and disgusted" and did not at any point convey that the touching was welcome.  (*Id.*).

Once Ranalli had exited the highway and arrived at the Union Square area of Manhattan, the adjunct professor exited the back seat and began walking away from the car.  (Am. Compl. ¶ 25).  As Plaintiff also exited the car, Ranalli stopped her and said he needed to talk to her "for a minute."  (*Id.*).  Plaintiff paused and turned toward Ranalli, and he stated, "[y]ou look so beautiful tonight, can I kiss you?"  (*Id.*).  Plaintiff did not respond and quickly exited the car; she then went into the restroom of the nearest restaurant and began to cry.  (*Id.* at ¶ 26).

### 3.   Ranalli's Apology and CUNY's Response

The next day, Plaintiff went to work and reported the incident to supervisors Wzsolek and Miller.  (Am. Compl. ¶¶ 27-28).  Both Wzsolek and Miller were "disgusted" and "dismay[ed]," and they expressed to Plaintiff that while she could choose to formally report the incident, Wzsolek and Miller would "definitely report it"; that it was "part of [their] jobs" to report it; and that "[the report] would be on file."  (*Id.* at ¶ 28).  Wzsolek and Miller assured

Plaintiff that they were "going to take care of [it]." (*Id.*).  A few days later, Wzsolek informed Plaintiff that she had spoken to Ranalli, who "confessed" to the events and wished to apologize to Plaintiff.  (*Id.* at ¶ 29).  In late January 2014, after Ranalli returned from winter break, he met with Wzsolek and Plaintiff in his office and apologized to Plaintiff, attributing his actions to the fact that he had been inebriated the evening of the party (including, presumably, the drive home).  (*Id.* at ¶ 30).

In the wake of the incident, Plaintiff was relocated to an office two doors down from her original office in Ranalli's conference room, with the intention that she would not have to interact with Ranalli.  (Am. Compl. ¶ 31).  Plaintiff further understood that she would no longer be assigned projects directly involving Ranalli (*id.* at ¶ 33), and that CUNY would investigate the incident (*id.* at ¶ 39).  Wzsolek and Miller assured Plaintiff that she would have "little to do" with Ranalli in the future.  (*Id.* at ¶ 31).

However, Plaintiff claims that these changes did not actually limit her contact with Ranalli: Plaintiff's new office was still on the same floor as Ranalli's office, and the two continued to see each other regularly in the hallways.  (Am. Compl. ¶ 32).  Moreover, another of Plaintiff's supervisors, Camille Hall, seemingly was not informed of the incident and continued to assign Plaintiff work requiring her to interact regularly with Ranalli.  (*Id.* at ¶ 33).

As a result of these near-daily interactions with Ranalli, Plaintiff began to suffer from stress, anxiety, and depression, and she became unable to

concentrate in class.  (Am. Compl. ¶¶ 34-35).  Both Plaintiff's grades and her work performance declined, and Wzsolek and Miller became dissatisfied with Plaintiff's work.  (*Id.* at ¶ 35).  Finally, around May 2014, Plaintiff, Wzsolek, and Miller met and determined it would be best for Plaintiff to take a break from her job.  (*Id.* at ¶ 36).  As a result, because she was no longer employed by the Spitzer School, Plaintiff lost eligibility for the DC 37 program.  (*Id.* at ¶ 37).

Around September 2014, Plaintiff's father, who worked on the CUNY campus, met with Wzsolek and informed Wzsolek that Plaintiff "[was] not doing well" and still struggled after the episode with Ranalli; he asked if the incident was related to Plaintiff leaving her position.  (Am. Compl. ¶ 38).  During the meeting, Wzsolek acknowledged that Ranalli had sexually harassed Plaintiff (*Id.*).

In approximately March 2015, Plaintiff became concerned that she had not received an update regarding CUNY's investigation into the complaint filed by Wzsolek and Miller.  (Am. Compl. ¶ 39).  On or about March 19, 2015, Plaintiff went to CUNY's Office of Human Resources, to which Miller had reported Plaintiff's complaint, to ask for further information.  (*Id.*).  Plaintiff was informed, however, that the complaint had been misfiled, and the Office of Diversity and Compliance, rather than the Office of Human Resources, handled sexual harassment complaints.  (*Id.* at ¶¶ 39-40).  Plaintiff was shocked and upset to discover that the promised investigation had never begun.  (*Id.*).

Plaintiff immediately went to meet with personnel from CUNY's Office of Diversity and Compliance and the Public Safety Department.  (Am. Compl.

¶ 41).  Michele Baptiste, the Dean of Diversity, Compliance and Faculty Relations, acknowledged that Plaintiff's complaint had never been investigated and that Plaintiff's supervisors had failed to report the incident to the proper department.  (*Id.* at ¶¶ 41, 43).  Around April 15, 2015, Baptiste wrote a letter to Plaintiff, explaining that she had finished investigating Plaintiff's complaint, that "[t]he allegations of sexual harassment against George Ranalli were substantiated," and that Ranalli did not deny the claims.  (*Id.* at ¶¶ 42-43).

As a result of the investigation, Ranalli was placed on administrative leave from his position as Dean of the Spitzer School.  (Am. Compl. ¶ 43).  Baptiste's letter also indicated that Miller had in fact reported the incident to the Office of Human Resources, which was not the correct department; consequently, Baptiste recommended that Plaintiff's "former supervisors receive training on the appropriate reporting procedures in sexual harassment cases."  (*Id.*).  In light of this, Plaintiff alleges that CUNY failed to train its employees on how to properly report sexual harassment complaints, and that CUNY failed to protect Plaintiff adequately from potential future instances of sexual harassment, even after it was notified of Plaintiff's encounter.  (*Id.* at ¶ 44).

## B.   **Procedural Background**

Plaintiff filed her initial Complaint in this matter on June 23, 2015 (Dkt. #4), and on September 21, 2015, Defendants submitted letters indicating their intent to move to dismiss the claims (Dkt. #12, 15).  After a pre-motion conference held on October 13, 2015, Plaintiff filed an Amended Complaint on

6

November 12, 2015, alleging sexual harassment under Title IX and discrimination on the basis of sex under the NYCHRL.  (Dkt. #20).  On December 16, 2015, Defendants CUNY and Ranalli each filed a motion to dismiss Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).  (Dkt. #26, 28).  Ranalli also submitted an Amended Memorandum of Law in support of his motion to dismiss on the same day.  (Dkt. #30).  Plaintiff filed her brief in opposition to both motions on February 1, 2016 (Dkt. #33), and Defendants each filed a reply on February 19, 2016 (Dkt. #34, 35), concluding briefing on the motion.

## DISCUSSION

### A.  Applicable Law

#### 1.  Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6)

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).  Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).  "While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [a plaintiff's] claims across the line from conceivable to plausible.'"  *In re*

*Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Moreover, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."  *Id.* at 663.

### 2. Sexual Harassment Claims Under Title IX

Title IX, as amended, provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  Student victims of sexual harassment at federally funded institutions have a private right of action for injunctive relief or money damages.  *Murray* v. *N.Y. Univ. Coll. of Dentistry*, 57 F.3d 243, 248 (2d Cir. 1995) (citing *N. Haven Bd. of Ed.* v. *Bell*, 456 U.S. 512, 520-34 (1982); *Cannon* v. *Univ. of Chicago*, 441 U.S. 677, 688-89 (1979); *Franklin* v. *Gwinnett Cty. Public Schs.*, 503 U.S. 60, 71-73 (1992)).  As compared to Title VII, "Title IX focuses more on 'protecting' individuals from discriminatory practices carried out by recipients of federal funds."  *Gebser* v. *Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 287 (1998) (citing *Cannon*, 441 U.S. at 704).

In order to state a claim for violation of Title IX, a plaintiff must demonstrate that:

> [i] she is a member of a protected group; [ii] she was
> subjected to unwelcome sexual harassment in the form
> of sexual advances, requests for sexual favors, or other
> verbal or physical conduct of a sexual nature; [iii] the
> harassment was based on sex; [iv] the harassment was
> sufficiently severe or pervasive so as to alter the
> conditions of her education and create an abusive
> educational environment; and [v] some basis for
> institutional liability has been established.

*Folkes* v. *N.Y. Coll. of Osteopathic Med. of N.Y. Inst. of Tech.*, 214 F. Supp. 2d

273, 281-82 (E.D.N.Y. 2002) (citing *Babcock* v. *Frank*, 783 F. Supp. 800, 808

(S.D.N.Y. 1992)).  With regard to the final factor, "[t]o establish institutional

liability for sexual harassment under Title IX, the plaintiff must show that 'an

official who … has authority to address the alleged discrimination and to

institute corrective measures on the [institutional] recipient's behalf has actual

knowledge of discrimination … and fails adequately to respond."  *Id.* (quoting

*Gebser*, 524 U.S. at 290) (alterations in *Folkes*).

**B.    Analysis**

    **1.  Plaintiff Has Stated a Claim Against CUNY for Violation of
Title IX**

        **a.    Plaintiff May Bring Her Claim Under Title IX**

It is undisputed that "[a] student may assert a private right of action for

damages directly against an educational institution for conduct violating Title

IX."  *Kracunas* v. *Iona Coll.*, 119 F.3d 80, 86 (2d Cir. 1997) (citations omitted),

*overruled on other grounds as recognized in Hayut* v. *State Univ. of N.Y.*, 352

F.3d 733, 739 (2d Cir. 2003).  Plaintiff asserts that, by virtue of being a CUNY

student, "she was entitled to the protections that Title IX provides irrespective

of how she came into contact with" Ranalli.  (Pl. Opp. 5-6).  Defendant CUNY,

in contrast, challenges the applicability of Title IX to this case, asserting that Plaintiff is suing in her capacity as an *employee* of the school, and that permitting plaintiffs to recover for employment discrimination under Title IX effectively bypasses the administrative procedures set up by Congress under Title VII.  (CUNY Br. 8-9).

While the parties acknowledge that the Second Circuit has yet to announce definitively whether plaintiffs may bring employment discrimination claims under Title IX, *see Summa* v. *Hofstra Univ.*, 708 F.3d 115, 131 (2d Cir. 2013), and other Circuits have divided on this issue, *see id.* at 131 n.1 (collecting cases), courts within this Circuit have suggested that such a cause of action may proceed, *see, e.g., Kohlhausen* v. *SUNY Rockland Cmty. Coll.*, No. 10 Civ. 3168 (JSG), 2011 WL 1404934, at *9 (S.D.N.Y. Feb. 9, 2011) (finding that "Title IX provides a private right of action against gender discrimination to employees of federally-funded educational institutions, and [ ] this Title IX right of action is not preempted although a remedy under Title VII is also available"), *abrogated on other grounds by Leitner* v. *Westchester Cmty. Coll.*, 779 F.3d 130 (2d Cir. 2015); *Henschke* v. *N.Y. Hospital-Cornell Med. Ctr.*, 821 F. Supp. 166, 171-72 (S.D.N.Y. 1993) ("The scope of protection under Title IX includes a prohibition against gender-based employment discrimination by educational programs receiving federal financial support.... This Court ... finds that a private right of action for employment discrimination exists under Title IX separate and apart from Title VII and without regard to the availability of the Title VII remedy."); *but see Vega* v. *State Univ. of N.Y.*, No. 97 Civ. 5767 (DLC),

2000 WL 381430, at *3 (S.D.N.Y. Apr. 13, 2000) ("This Court agrees with the Fifth Circuit and numerous district courts that have held that Title VII provides the exclusive remedy for individuals alleging employment discrimination on the basis of sex, and limiting money damages under Title IX to student plaintiffs.").

In the instant case, however, the Court finds that Plaintiff has sufficiently alleged that she was denied educational resources and opportunities as a CUNY student as a result of the events at issue; that is, in claiming discrimination that impacted both her education and her student employment, Plaintiff is quite unlike the typical plaintiff who seeks to bring employment discrimination claims under Title IX.  In the Amended Complaint, Plaintiff alleges that she participated in the DC 37 program, offered by CUNY, which rendered her eligible for a "tuition fee waiver," and allowed her to receive certain health care benefits.  (Am. Compl. ¶¶ 16-18).  Plaintiff claims that she was financially dependent on her on-campus job (*id.* at ¶ 50), and that it allowed her to maintain her enrollment at CUNY.  When her work performance declined as a result of the incident and the subsequent near-daily interactions with Ranalli, Plaintiff was asked to take a leave from the position and thus lost eligibility for the tuition assistance program.  (*Id.* at ¶¶ 36-37).  Because the harassment Plaintiff experienced jeopardized not only her academic performance but also the tuition assistance provided by CUNY that helped her remain enrolled in school, materially affecting her education, the Court finds that Plaintiff has alleged that she was denied access to educational opportunities, and will allow the claim to proceed under Title IX.

11

While discovery may ultimately reveal that the program through which Plaintiff worked does not bear enough connection to her status as a student to allow her to sue under Title IX, or that her continued participation in the program did not affect her access to educational opportunities, the Amended Complaint pleads otherwise.  At this stage, the Court must accept all of Plaintiff's allegations as true and draw all reasonable inferences in her favor, and here she has passed the threshold permitting her Amended Complaint to proceed under Title IX.

### b.   Plaintiff Has Sufficiently Pleaded Sexual Harassment Under Title IX

As stated above, for an educational institution to be liable for sexual harassment under Title IX, a plaintiff must demonstrate that "a school official with authority to address the alleged discrimination and to institute corrective measures" had "actual knowledge" of the sexual harassment and responded with "deliberate indifference."  *Papelino* v. *Albany Coll. of Pharm. of Union Univ.*, 633 F.3d 81, 89 (2d Cir. 2011) (citing *Gebser*, 524 U.S. at 280 (internal quotations omitted)); *see also Zeno* v. *Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 665 (2d Cir. 2012) (finding that, like a Title IX claim, a Title VI claim requires "[i] substantial control, [ii] severe and discriminatory harassment, [iii] actual knowledge, and [iv] deliberate indifference" (internal citations omitted)).

### i.   Plaintiff Has Pleaded Severe and Pervasive Harassment

Plaintiff claims that Ranalli's inappropriate conduct and the school's delayed response created a hostile environment that interfered with Plaintiff's

education and caused her to suffer from depression and anxiety.  (Am. Compl. ¶¶ 46, 48).  In opposition, CUNY contends that the single instance of inappropriate behavior by Ranalli was neither severe nor pervasive enough to create a hostile environment under Title IX standards.  (CUNY Br. 12-14).

A plaintiff may assert a Title IX claim of sexual harassment under two theories: (i) quid pro quo harassment or (ii) hostile environment.  *See, e.g.*, *Papelino*, 633 F.3d at 89; *Torres* v. *Pisano*, 116 F.3d 625, 630 (2d Cir. 1997).  "[A] Title IX hostile education environment claim is 'governed by traditional Title VII 'hostile environment' jurisprudence.'"  *Papelino*, 633 F.3d at 89 (citing *Hayut*, 352 F.3d at 744).  "A Title IX plaintiff must show that [i] [s]he subjectively perceived the environment to be hostile or abusive and that [ii] the environment objectively was hostile or abusive, that is, that it was permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of [her] educational environment."  *Id.* (citing *Hayut*, 352 F.3d at 745).

"[W]hether sexual harassment alters the conditions of employment 'is not, and by its nature cannot be, a mathematically precise test.'"  *Schiano* v. *Quality Payroll Syst., Inc.*, 445 F.3d 597, 605 (2d Cir. 2006) (citing *Harris* v. *Forklift Sys.*, 510 U.S. 17, 22 (1993)).  "Making a 'hostility' determination in the educational context, as in the employment context, entails examining the totality of the circumstances, including: 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with' the

13

victim's academic performance." *Hayut,* 352 F.3d at 745 (citing *Harris*, 510 U.S. at 23).  As stated in the Title VII context, "[i]solated incidents typically do not rise to the level of a hostile work environment unless they are 'of sufficient severity' to 'alter the terms and conditions of employment as to create such an environment.'" *Demoret* v. *Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006) (quoting *Patterson* v. *County of Oneida*, 375 F.3d 206, 227 (2d Cir. 2004)). "Generally, 'incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Id.* (quoting *Alfano* v. *Costello*, 294 F.3d 365, 374 (2d Cir. 2002)).

However, the Second Circuit has cautioned that "hostile work environment claims present mixed questions of law and fact that are especially well-suited for jury determination." *Schiano*, 445 F.3d at 605 (internal citations omitted).  Further, as the Second Circuit recently held in the Title IX context, "[a] complaint under Title IX, alleging that the plaintiff was subjected to discrimination on account of sex in the imposition of university discipline, is sufficient with respect to the element of discriminatory intent, like a complaint under Title VII, if it pleads specific facts that support a *minimal plausible inference* of such discrimination." *Doe* v. *Columbia Univ.*, — F.3d —, Nos. 15-1536-cv (L), 15-1661-cv (XAP), 2016 WL 4056034, at *7 (2d Cir. July 29, 2016) (emphasis added).

Here, the totality of the circumstances lends itself to a jury determination, or at the very least, to reevaluation after the close of discovery. Plainly, the harassment at issue was not frequent, as Ranalli only rubbed

14

Plaintiff's thigh on one occasion, and Plaintiff alleges no further incidents of harassment after the event.  (Am. Compl. ¶¶ 23-24).  Nor was it notably "severe," as Plaintiff's thigh is not an especially intimate body part.  *Cf. Redd* v. *N.Y. State Div. of Parole*, 678 F.3d 166, 180 (2d Cir. 2012) ("Direct contact with an intimate body part constitutes one of the most severe forms of sexual harassment….").  Plaintiff's reference to the presence of an adjunct professor in the back seat of the car may cut both ways: while a third party's presence may have rendered the events less physically threatening, it might simultaneously have made the situation more humiliating for Plaintiff.

To be clear, the Court has surveyed the landscape of hostile environment allegations in this Circuit under Title VII and Title IX, and Plaintiff's claims fall on the less "severe" end of the spectrum; indeed, courts have dismissed similar cases involving single incidents of inappropriate touching or behavior.  *See, e.g.*, *Ballance* v. *Energy Transp. Corp.*, No. 00 Civ. 9180 (LMM), 2001 WL 1246586, at *2, 11 (S.D.N.Y. Oct. 18, 2001) (finding Plaintiff failed to state a claim for hostile work environment based on "one isolated incident" of a co-worker touching her buttocks and untying her apron); *Prince* v. *Cablevision Sys. Corp.*, No. 04 Civ. 8151 (RWS), 2005 WL 1060373, at *9 (S.D.N.Y. May 6, 2005) (finding no hostile work environment where plaintiff's co-worker attempted to kiss her, solicited her for sex, and made additional inappropriate sexual comments).  *But see Howley* v. *Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000) ("[T]here is neither a threshold magic number of harassing incidents that gives rise, without more, to liability as a matter of law, nor a number of

15

incidents below which a plaintiff fails as a matter of law to state a claim."
(internal citations and quotation marks omitted)).

Nonetheless, the rubbing of Plaintiff's leg continued sporadically for
thirty minutes, while Plaintiff was confined to a moving car on the highway at
night, from which she could not leave.  Further, while Plaintiff was an
undergraduate student working as a college assistant, Ranalli was the
significantly older dean of a school within City College — putting him in a
position of power — as well as one of Plaintiff's own supervisors at work.
Moreover, Plaintiff alleges that the incident and its aftermath caused her to
become depressed and anxious, interfering significantly with her performance
at both school and at work.  In light of these allegations, considered in the light
most favorable to Plaintiff, the Court finds that Plaintiff's allegations suggest
that the incident effectively altered the conditions of her education (as well as
her employment), and thus the Amended Complaint traverses the line of
plausibility required at the motion to dismiss stage.

### ii.        Plaintiff Has Pleaded Actual Knowledge

With regard to the second prong, the Amended Complaint alleges that
Plaintiff informed her direct supervisors, who attempted to file a complaint on
her behalf.  (Am. Compl. ¶¶ 27-28).  It further alleges that while Plaintiff's
supervisors failed to send the complaint to the correct department, they were
later informed of the proper procedures and destination for such complaint.
(*Id.* at ¶¶ 40, 43).  From these facts, the Court infers that it was within
Plaintiff's supervisors' power to "address the alleged discrimination," *Papelino*,

16

633 F.3d at 89, and that they were aware of the harassment at issue.  Thus, Plaintiff has met the burden of demonstrating actual knowledge.

### iii.  Plaintiff Has Pleaded CUNY's Deliberate Indifference

Plaintiff further alleges that CUNY's response to the incident was deliberately indifferent because, in spite of her meeting with supervisors immediately following the incident, Plaintiff was still required to interact with and work for Ranalli on a regular basis.  (Am. Compl. ¶¶ 33-34).  Moreover, Plaintiff's supervisors' complaint went unacknowledged after being misfiled, and no investigation into the harassment took place until more than a year later, when Plaintiff contacted the Office of Diversity and Compliance.  (*Id.* at ¶¶ 39-41).  Defendant CUNY argues, in opposition, that it adequately responded to Plaintiff's complaint by relocating Plaintiff's office — after which she made no further claims of harassment — and by promptly investigating Plaintiff's allegations and taking corrective action following proper receipt of Plaintiff's complaint.  (CUNY Br. 15-17).  CUNY further alleges that, during the year following the harassment incident, Plaintiff simply failed to follow up with her supervisors or the Office of Human Resources, which does not amount to deliberate indifference.  (*Id.* at 16-17).

"A finding of deliberate indifference depends on the adequacy of a school district's response to the harassment."  *Zeno*, 702 F.3d at 666 (citing *Hayut*, 352 F.3d at 750).  An employer or educational institution is deliberately indifferent when its "response to known discrimination 'is clearly unreasonable in light of the known circumstances.'"  *Hayut*, 352 F.3d at 751 (citing *Gant* v.

17

*Wallingford Bd. of Educ.*, 195 F.3d 134, 141 (2d Cir. 1999)).  A plaintiff may show that a school was deliberately indifferent if its response was "not reasonably calculated to end harassment," *Zeno*, 702 F.3d at 669; if its inaction "cause[d] students to undergo harassment or ma[d]e them liable or vulnerable to it," *Davis* v. *Monroe County Bd. of Educ.*, 526 U.S. 629, 645 (1999); or if "remedial action only follow[ed] after a lengthy and unjustified delay," *Hayut*, 352 F.3d at 751 (internal citations omitted).

Here, while Plaintiff cites no additional instances of harassment by Ranalli, she alleges sufficient facts to establish deliberate indifference at the motion to dismiss stage.  First, Plaintiff claims that despite Wzsolek's and Miller's assurances that she would have "little to do" with Ranalli, Plaintiff's office was only moved two doors down from its original location and she continued to see Ranalli regularly in the hallways.  (Am. Compl. ¶¶ 31-33). Second, though Wzsolek alerted Miller of the harassment, the two failed to inform another of Plaintiff's supervisors, Camille Hall, who continued to assign Plaintiff projects that required interaction with Ranalli.  (*Id.* at ¶ 33).  Third, despite Wzsolek's and Miller's promises that they were obligated to and would report the incident, neither they nor the Office of Human Resources properly reported the matter, delaying CUNY's investigation for more than a year until Plaintiff reached out to the Office of Diversity and Compliance herself.  (*Id.* at ¶¶ 28, 39-41).  Furthermore, Plaintiff is not demanding a specific remedy that the school administrators refused to grant to her — rather, she contends that the school's failure to officially document or investigate the issue, and the office

relocation that left her in continued contact with Ranalli, were insufficient solutions that left her vulnerable to future harassment.

While Wzsolek and Miller likely intended to report the matter, and may have accounted for Ranalli's apology and for the likelihood of further sexual harassment when taking remedial measures, Plaintiff has nonetheless stated facts that could plausibly demonstrate that the school unjustifiably delayed its investigation and did not adequately protect Plaintiff from the risk of additional harassment.

## 2. Plaintiff Has Stated a Claim Against Ranalli for Violation of the NYCHRL

In the second cause of action in her Amended Complaint, Plaintiff alleges that Ranalli aided and abetted CUNY in its discriminatory conduct against Plaintiff. (Am. Compl. ¶¶ 60-62). Ranalli contends, in opposition, that (i) he cannot be held liable absent "actionable conduct" by someone amounting to gender discrimination (Ranalli Br. 6-10); (ii) he cannot be held liable for aiding and abetting gender discrimination absent CUNY's liability (*id.*); and (iii) in any event, courts have not uniformly permitted individuals to be held liable as aiders and abettors to their own acts under the NYCHRL, and that issue should be left for state courts to resolve (*id.* at 10-14). All of Defendant's asserted grounds for dismissal fall short.

At the outset, for the reasons discussed above, Plaintiff has sufficiently alleged gender discrimination against CUNY under Title IX, mooting Ranalli's second contention that there can be no derivative claim for aiding and abetting this conduct.

### a.    Plaintiff Has Pleaded Discrimination Under the NYCHRL

With regard to the substance of Plaintiff's claim, Ranalli maintains that Plaintiff's allegations do not fall into one of three distinct patterns of sexual harassment under the NYCHRL, particularly as Plaintiff never signaled an overt objection to Ranalli's conduct; thus, he claims, there is no actionable conduct. (Ranalli Br. 6-10).

In 2005, the New York City Council amended the NYCHRL, creating a "one-way ratchet" so that "state and federal civil rights statutes can serve only as a floor below which the City's Human Rights law cannot fall," and also construing the NYCHRL's protections more capaciously.  *Mihalik* v. *Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013). Consequently, the Court must "constru[e] the NYCHRL's provisions 'broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible.'" *Id.* (citing *Albunio* v. *City of N.Y.*, 16 N.Y.3d 472, 477-78 (2011)).  Instead of requiring the Title IX standard of "severe or pervasive" harassment, the NYCHRL only requires that the plaintiff show "'by a preponderance of the evidence that she has been treated less well than other employees because of her gender.'" *Id.* at 110 (citing *Williams* v. *N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 39 (1st Dep't 2009)).  The disparate treatment need not be a "tangible' action such as "hiring or firing," but does need to be motivated "at least in part" by discrimination.  *Id.* (internal citations omitted).  Yet the NYCHRL is not a "general civility code," and it makes available an affirmative defense if the alleged discriminatory conduct "consists of nothing more than

what a reasonable victim of discrimination would consider 'petty slights and trivial inconveniences.'" *Id.* at 111 (citing *Williams*, 872 N.Y.S.2d at 41).

Here, Plaintiff has sufficiently alleged that she was subjected to "unwanted gender-based conduct," *Mihalik*, 715 F.3d at 110 (citing *Williams*, 872 N.Y.S.2d at 38), as evidenced by the survival of her Title IX claim.  First, the conduct was clearly gender-based.  Ranalli's rubbing of Plaintiff's thigh, his remark that Plaintiff "look[ed] so beautiful tonight," and his request to kiss Plaintiff would not have occurred but for Plaintiff's gender.  As a result, Plaintiff was subject to differential treatment based on her gender.  And while Defendant Ranalli attempts to group NYCHRL claims into three limited and distinct categories — (i) a single, egregious incident, (ii) repeated harassing conduct, or (iii) propositioning or sexual comments directed toward an individual — the Court has already determined that Plaintiff's allegations, taken in the light most favorable to her, permit an inference that the single incident at issue was severe enough to support a Title IX violation.  *See supra* at 12-16.  Thus, it necessarily supports an NYCHRL violation as well.  *See Mihalik*, 715 F.3d at 109 ("[S]tate and federal civil rights statutes can serve only as a floor below which the City's Human Rights law cannot fall." (internal quotation marks omitted)).

Further, it is not implausible for the Court to infer at this stage that the conduct was unwanted.  The Court acknowledges the Supreme Court's observation that "the question [of] whether particular conduct was indeed unwelcome" depends on "whether respondent by her conduct indicated that

the alleged sexual advances were unwelcome." *Meritor Sav. Bank, FSB* v.

*Vinson*, 477 U.S. 57, 68 (1986) (citing 29 C.F.R. § 1604.11(a) (1985)).  However,

such a determination, like a hostile environment determination, may call for a

consideration of the particular context and factual circumstances.  *See id.* at

68-69 (holding that "credibility determinations committed to the trier of fact,"

and other evidence such as a "complainant's sexually provocative speech or

dress" may help indicate whether a defendant's actions were unwelcome).

Here, while Plaintiff does not allege that she explicitly rejected Ranalli's

advances, the situation in its entirety may suggest that the lack of a positive

response on Plaintiff's part was adequate: as the Court has repeatedly

observed, there was a large age gap and power differential between Plaintiff, a

student assistant, and Ranalli, a much older dean of a school in a supervisory

position; the incident occurred at night in a moving vehicle on the highway,

giving Plaintiff no option to leave the situation; and Ranalli was inebriated.  As

a result, the Court declines to hold as a matter of law that Plaintiff was not

subjected to unwelcome gender-based conduct, and finds that Plaintiff has

sufficiently alleged disparate treatment under the NYCHRL by Ranalli.

### b.   Ranalli May Be Liable Under an Aiding and Abetting Theory for His Own Conduct

"The NYCHRL allows for the possibility of aiding and abetting liability for

individual defendants, providing that '[i]t shall be an unlawful discriminatory

practice for any person to aid, abet, incite, compel or coerce the doing of any of

the acts forbidden under this chapter, or to attempt to do so.'" *Henry-Offor* v.

*City Univ. of N.Y.*, No. 11 Civ. 4695 (NRB), 2012 WL 2317540, at *5 (S.D.N.Y.

June 15, 2012) (citing N.Y.C. Admin. Code § 8-107(6)).  While Ranalli contends
that "a person cannot aid and abet his own allegedly discriminatory conduct"
under the NYCHRL (Ranalli Opp. 10), courts within this Circuit have held that
"[a] plaintiff's co-worker or supervisor may be held liable under this provision if
he 'actually participates in the conduct giving rise to a discrimination claim.'"
*Henry-Offor*, 2012 WL 2317540, at *5 (citing *Tomka* v. *Seiler Corp.*, 66 F.3d
1295, 1317 (2d Cir. 1995)); *see also Feingold* v. *New York*, 366 F.3d 138, 157-
58 (2d Cir. 2004) (same); *Torres* v. *N.Y. Methodist Hosp.*, No. 15 Civ. 1264
(PKC), 2016 WL 3561705, at *12 (E.D.N.Y. Jan. 7, 2016) ("An individual need
not have supervisory or hiring/firing power to be subject to suit under [the
NYCHRL], so long as he actually participated in the conduct giving rise to the
discrimination claim." (citations omitted)).

Here, as discussed at length above, Plaintiff's Title IX claim for gender
discrimination against CUNY has been sustained, and the Amended Complaint
alleges that Ranalli actively participated in, and indeed was primarily
responsible for, the events underlying the discrimination.  Consequently, the
Court will permit Plaintiff's claim of aiding and abetting liability against Ranalli
to proceed.  Moreover, because Plaintiff's Title IX claim has been sustained and
her NYCHRL shares a "common nucleus of operative fact," *Achtman* v. *Kirby,
McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006), the Court will
exercise its supplemental jurisdiction and will not dismiss this state law claim
against Ranalli.

## CONCLUSION

For the reasons stated above, Defendants' motions to dismiss are hereby DENIED.  The Clerk of Court is directed to terminate docket entries 26 and 28. The parties are directed to appear for a conference with the Court on **Wednesday, August 30, 2016, at 4:00 p.m.** in Courtroom 618 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York.  On or before **Thursday, August 25, 2016**, the parties shall submit a proposed Case Management Plan, as well as the joint status letter contemplated by the Plan.

SO ORDERED.

Dated:  August 9, 2016
        New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

24